Our first case today is 523-0408, People v. LeBron Neal, Council. It's Ms. Hartick, right? Correct, Hartick. Hartick, I'm sorry. If you would, obviously, come up, state your name for the record and you can proceed. Thank you, and first, my condolences on the passing of Justice Welch. Thank you. May it please the Court, Andrea Lewis Hartung arguing for LeBron Neal. Mr. Neal was resentenced for first-degree murder in 2023, over 26 years after he tragically shot and killed two of his peers when he was 17 and received mandatory natural life. At that hearing, he presented evidence that at quarter century after those crimes, he had not just reformed but transformed into a 44-year-old man with nearly a programming certificate within the prison, 20 years of work leading an effort to curb youth gang and gun violence in Illinois, the official renunciation of the gang he had been a member of on the outside, and with just six disciplinary incidents over 25 years in the Illinois Department of Corrections. The circuit judge responded to that evidence that he wasn't sure Mr. Neal's efforts were altruistic. And then the circuit court ruled that based on what was on the record 26 years earlier at the first sentencing hearing, Mr. Neal was irreparably corrupt at the time of the crime and resentenced him to life. This was an abuse of discretion as a matter of law and this court should reverse and remand for resentencing. And considering the evidence, we've asked in our briefs that this court order the circuit court to sentence Mr. Neal within the 20 to 60 year range for first-degree murder. Now issues 1, 2, and 3 respectively argue that the court abused its discretion within the factual findings and in the sentence. And so in the interest of time and without waiving any arguments, I'd like to focus today on why critical findings below constituted reversible error. So as far as first issue, Rule 615B allows this court to reduce sentences if it finds that the sentence was excessive. And this court has found reversible error if a lower court's rulings are arbitrary or unreasonable. And we submit that that is what happened here. And what happened here is that we have a judge who worked backwards from the natural life sentence that Mr. Neal had before. And in a situation like this where a sentence can be predetermined based on what is in the record, the court has reduced a sentence. And so admittedly, we had an unusual hearing here where a court had 26 years of information concerning Mr. Neal's maturation, his rehabilitation, and there was expert testimony about his youth and how that youth affected his maturation at the time of the crime. And the court here, starting backwards, it talks about rehabilitation, and that's where the court says before it sentences him, I think that the court can look at that from both the perspective of 1997 and today. And looking at that 1997 record, the court says, quote, I don't really see how a court could have concluded with what was known at that time any rehabilitative potential. And then when he looks at the rehabilitation of Mr. Neal that he has presented now, he says that he's not sure where that ultimately lands. And so he's not giving that weight because he can't figure out what the motives for Mr. Neal's rehabilitative efforts were. And the court says things like, I would think it abundantly clear to the court if his efforts were done for altruistic reasons. And he says that perhaps LeBron or Mr. Neal was preparing for a hearing like this or preparing to come back to court, even though Mr. Neal was sentenced back in 1997 and much of his mitigating evidence had happened well before Miller v. Alabama, which is how he ended up being resentenced. And at this point and at that point in 2023, Mr. Neal's record after 1997 was longer than it had been with him outside of prison. And so where he's taking these efforts to educate himself and mentor people and start this effort called the fallback movement, he's doing these things before he had any hope of getting back in court. He knew he was dying in prison, or at least he thought he was. The court also says it was just as plausible that Mr. Neal was manipulating some of the witnesses as it was that he was being altruistic. He bases this on the testimony or he says he bases this on the testimony of two individuals who had testified that they had known Mr. Neal in the Jackson County Jail before resentencing for just a bit. Both of those individuals were out of custody by the time they testified, and both of them testified that he was kind and genuine and that he was a protector in prison. Neither of them testified that he was manipulating anyone. And his other witnesses, Mr. Neal's other witnesses, were experts and other professionals, including a 50-year veteran of the Illinois Department of Corrections. He was the former director, Salvador Godinez. And then a 34-year employee and LeBron's counselor who had driven five hours to testify on his behalf and had worked in the Department of Corrections. Both of those individuals talked about working with thousands of prisoners in their time, and they talked about how LeBron's rehabilitation and the change he had made stood out to them. And then the court ends with, I think at the time of the offense, there was irreparable corruption. And the court says that's based on the crimes, the history, LeBron's history of offenses, which happened between approximately ages 13 and 17, and his gang membership at the time. Now, it's fair. I mean, this was a terrible crime. LeBron or Mr. Neal took two people's lives, and so weighing the offense heavily, absolutely fair. The issue here was that when the court is looking at things that were static, that were before the court in 1997, and basing the opinion on that after saying things that Mr. Neal presented that mitigated his use, were not mitigating or talking about aggravating factors that weren't apparent on the record, that is where the abuse of discretion comes in. For instance, mitigating factors of use, they are mitigating. We did have an expert here who testified to well-established factors that are accepted by the courts and how they applied to Mr. Neal when he was a teenager. And so, for instance, Dr. Garbarino testified that Mr. Neal's home environment was traumatic, that he had endured abuse, he had watched abuse, that he was introduced to gangs at a very young age by his own family and had joined by the time he was in seventh grade. He was in special education classes, but his mother was keeping him out of school where he could get help. And when a probation officer recommended counseling for Mr. Neal, the family, according to those notes, the family opposed. And Mr. Neal's mother actually got into an argument with the officer over whether or not he needed counseling. And so they are actively keeping him away from services. And at the same time, in his household, he, again, is seeing people with criminal records and seeing violence. And that's where he ended up. And so the court looked at that and basically said that Neal had experienced, Mr. Neal had experienced consequences in the past without mentioning the role of his family. And he said that, you know, consequences didn't seem to matter as he moved through adolescence without addressing any of that information from the expert. And whereas here, there's been dull use of expert testimony, as the court said in Neal, and the court hasn't explained why it is that that expert testimony and the information on the record did not weigh with the information available back in 1997. That is an error, and this court should reverse. And there are many other examples, but I think that is a glaring one we have put other in our briefs. And so for that reason, because the court's findings were arbitrary and unreasonable, we ask that this court reverse and send Mr. Neal's case back for resentencing. Any questions? No questions. Well, at the beginning of the sentencing hearing, did the defendant elect to be sentenced under the 1996 statute? At the beginning of the sentencing hearing, Mr. Neal's counsel represented that he had elected to be sentenced under the 1996 statute. But as we argued in our brief, the court had never admonished him of that right and that there were differences between the 1996 statute and the 2023 statute. And that is a responsibility placed on the court for due process purposes, and he had not done that admonishment or received an express waiver from Mr. Neal. So which statute was he sentenced under? So that is a little unclear. The court says, or at least I think the court says they used the 1996 statute. The judgment, the written judgment says that Mr. Neal was sentenced under Section A1B of that statute. But then on the motion to reconsider at the hearing, the court said it was mistaken, which I think means he would have been sentenced under Section A1C, which was the mandatory life without parole provision. Or could he have sentenced him under the 1992 statute? The 1992 statute wasn't, as far as I can tell, different from 1996. But it did, when he mentioned the 1992 statute before, create confusion as, you know, evident on the record as there's back and forth over what statute applies, which statute the court's going to use. And Mr. Neal himself is, you know, saying, like, I don't understand. I think it seems like what you're trying to sentence him to be under is a statute that doesn't exist. Thank you, Counsel. Thank you. Thank you, Counsel. May it please the Court. I'm Luke McNeill at the Appellate Prosecutor's Office in Springfield representing the state. Before I forget. Why does this say John McNeill? Well, my name's John Lucas McNeill. And on some briefs it's John, and it's Luke on this one, so that's why I introduced myself as Luke. I apologize for the confusion. You don't know you're going to get hit with a hard one. I know. As for the election of the statute, that was extensively discussed on the record. In fact, there was a written finding by the trial court as to we're sentencing you under the 1996 statute. Defendant expressed dissatisfaction with that and with the ruling of this court in Gibbs, but just because defendant did not agree with the trial court's finding, he's still elected to proceed under the 1996 sentencing statute, knowing full well that a discretionary life sentence was possible. Also, a couple things from counsel's argument. As for the trial court stating that defendant's actions possibly weren't altruistic, and defendant was in the courtroom the whole time. The trial court was in the best position to evaluate the credibility and demeanor of everyone in the courtroom, including defendant. And defendant's argument here is essentially an excessive sentence argument, and they're asking this court to re-weigh the aggravating and mitigating factors against the nature and circumstances of this offense and make credibility determinations, which is precisely what courts of review shouldn't do in excessive sentence arguments. The trial court, like I said, is in the superior position to make those findings, which is why they have such a high standard of review on appeal. It's abusive discretion, which is the highest standard of review. Like I say, this was an excessive sentence argument at this point because defendant was resentenced properly in compliance with Miller. That was grinded into the record that clearly all the Miller factors were discussed and analyzed by the trial court and considered by the trial court in fashioning this sentence. But those Miller factors also have to be weighed against the nature and circumstances of the offense, or offenses here. What's important is that this is a double murder. Most of the cases arguing Miller either have to do with a non-murder offense or a single murder. This was a double murder, and an exceptionally brutal one at that. The two victims were teenagers, ages 15 and 16. There was no self-defense argument. There was no provocation. This was a senseless murder where defendant snuck up on Terrence, shot him in the head, fatally wounded him. Then he gave chase to Austin, the second victim, lies to him to get him to stop running, shoots him in the head, realizes he's still alive, shoots him again to make sure he's dead, simply because he admitted that he just didn't want to go to prison for shooting Terrence. These are premeditated, calculated, and really senseless murders here. Defendant's actions show that not only does he know now the consequences of his actions, but he knew then. Defendant ran after Austin, made sure Austin was dead because he didn't want to go to prison for shooting Terrence. Clearly he knew the consequences of his actions, and he knew how serious it was to murder someone for basically some drug money. The record clearly shows the trial court considered defendant's youth and attendant characteristics and all the Miller factors when fashioning a sentence, and clearly this wasn't an abuse of discretion. Defendant's mitigation experts, he did have them. Again, the trial court was in the best position to evaluate their credibility. Quite frankly, they were dinged up pretty bad on cross-examination, both of them. Similarly, the trial court rightly characterized his testimony as unpersuasive. He held no degree in any relevant field, and he was not even offered as an expert in any field. He used a flawed methodology to analyze this case and blindly accepted defendant's self-serving version of events without checking them. Same goes for Dr. Garbarino, who has made a cottage industry of testifying at these Miller resentencings all over the country. His opinion was based on a short questionnaire that defendant filled out eight years after Miller was decided. In other words, defendant knew exactly what to put on a questionnaire like that. Garbarino didn't check defendant's self-serving answers on this and took them as gospel. Garbarino also admitted on cross-examination that he misrepresented the Miller holding in his report in this case. The main point is that the trial court was in the best position to evaluate the credibility and place however much weight they wanted to on these mitigation experts. The trial court did find some instructive things with both Simmerling and Garbarino, but they weren't. The trial court was not obligated to take everything they say and weigh that more heavily than the nature and circumstances of this double murder. As for the issues regarding the election of the 1996 statute and also the nature and circumstances of this case is the Gibbs case that this court decided in 2022. That was also my case. It's an unpublished decision, but it's instructive just for how similar it is. There, like here, the defendant murdered two people. There, like here, the defendant received a mandatory life sentence and then was re-sentenced pursuant to Miller. There, like here, the defendant received a discretionary life sentence on re-sentencing. There, like here, the defendant elected to be sentenced under the 1996 statute. And in Gibbs, this court held that the discretionary life sentence given for that double murder was not only compliant with Miller, but it was a valid sentence under the 1996 statute, albeit discretionary instead of mandatory. Is it your position that he was sentenced under the 1996 statute and not the 1992 statute? It was the 1996, just based on the finally rewritten finding of the trial court before the re-sentencing hearing even began, saying this is my finding. He's being sentenced under the 1996 statute, and he's elected to do so. That's in the common law record. So I think there is a missight of it might be the mandatory natural life of it where it is in the 1992 statute at first. But as the opposing counsel mentioned, it was corrected. It's C-2, or it's a wrong statutory subsection in 1996, but that is the precise subsection he was sentenced under, and it's the precise subsection that Gibbs was re-sentenced under as well. He elected the 1996 statute. This court's reasoning in Gibbs was sound. There's no reason to depart from it here. In fact, this nature of circumstances of these two murders is markedly worse than Gibbs. There's some allegations of parental abuse in Gibbs. He murdered his two parents in that case. This one is, like I said, senseless premeditated. It calculated up to a 15- and a 16-year-old, so clearly there's no reason to depart from the sound logic in Gibbs. Also, it's worth highlighting that Gibbs was decided one year before this sentencing hearing took place. The defendant was well aware that a discretionary life sentence was possible pursuant to Gibbs and still elected to go under the 1996 statute. The defendant can elect to proceed one way below and then claim error on appeal. We can call it collateral esophobia or invited error or whatever you want to term it, but clearly that argument would be waived and procedurally defaulted. And if there are no more questions, I would ask this court to affirm. Mr. Schultz? No questions. Any further questions? No questions. Thank you, counsel. Thank you. And proceed. Counsel has, or my opposing counsel, has characterized Mr. Neal's argument as one of dissatisfaction or reweighing, and this isn't that. This is a situation in which the court's process erred. This isn't about credibility determinations. This is about, based on what was in the record, what the court did in the sentence the court gave. And, yes, the court did mention all of the factors, but as Gibbs noted, the court can't just pay lip service to those factors. It has to weigh them. And so, again, when we're talking about altruism, there was no credibility issue here. The court didn't say that he didn't believe that what happened or what Mr. Neal presented happened in his childhood didn't happen. In fact, the court clarified at the hearing on the motion to reconsider that the information presented wasn't in dispute, and the court didn't dispute or say he didn't believe that Mr. Neal had taken these rehabilitative efforts. What the court said was that it wasn't sure Mr. Neal was altruistic, and the court used that altruism language multiple times. That is not a legal standard, and, in fact, you know, this idea that one has to try to prove to an individual judge that they're altruistic, I mean, that's hard to know what to do there, and we don't want a situation in which individuals are attempting to game the system, which didn't happen here, and we don't want it to. And so the court really should be looking to the information it credits in making decisions accordingly. Yes, Mr. Neal admitted he committed these double murders. Murder is always senseless, and Mr. Neal, for the first time at this hearing, took responsibility for it, and that was something that the court held against him in 1997. So that is evidence of his maturity that this court never mentioned. And counsel said that the other Miller cases or the other cases where sentences have been reduced were not murder cases or weren't double murder cases. And I point this, of course, to People v. Morris, which I know the state noted the first district didn't consider good law after Wilson, but in 2023 that opinion essentially came out again because Mr. Morris had again been sentenced to 100 years, and there was a murder plus an attempt murder. He had shot two people, received 100 years. The court said that was an abuse of discretion because it didn't consider Article I, Section 11 of our state constitution, and it didn't act on trying to restore that person to useful citizenship. In Montgomery, even Montgomery, the case that allowed people to come back to court to be resentenced, terrible facts. You have a 17-year-old who shot and killed a law enforcement officer. So there are situations in which courts see that these are very terrible crimes, and yet those crimes may have been a product of the person's youth, and they have to look at that and look at the rehabilitative potential. And so here where the court said that Dr. Garbarino's testimony was very helpful and said, you know, you're testifying about things that matter here and about Mr. Neal's youth, the court can't just set that aside and look at what was before the court in 1997. And so, yes, abuse of discretion is a high bar. This meets it. The court's decisions are not unassailable for this very reason. And so when, especially when it comes to sentencing kids and when it comes to a state constitution that requires looking at restoration to useful citizenship, we expect the court to look carefully at this information, to not set it aside or make opposite decisions of what the expert said with no information as to why. And so where there is an abuse of discretion, which happened here, we ask that the court overturn the sentence. If there are no further questions. Thank you, counsel. Justice Moore, do you have a question? All right. Thank you. Obviously, we will take the matter under advisement, and we will issue an order in due course. Thank you, counsel. Thank you. Be safe traveling back. Thank you.